UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAMELA M. DACE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00474-SRC |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**Memorandum and Order**

Pamela M. Dace seeks judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–34, and partially denying her application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–85.  The Court affirms the Commissioner's decision.

**I.      Procedural history**

This case has an unusual procedural history involving four claims and three appeals to this Court.  In 2007, Dace filed a Title II application for disability insurance benefits (claim 1) and a Title XVI application for supplemental security income (claim 2), alleging disability beginning November 9, 2004.  In 2012, while her appeal regarding the denial of claims 1 and 2 was pending in this Court, she filed another supplemental-security-income application (claim 3) alleging disability beginning March 16, 2010.  The ALJ denied claim 3 in 2013.

Then, in 2014, the Honorable Terry Adelman, United States Magistrate Judge, resolved Dace's first appeal by reversing the Commissioner's denial of claims 1 and 2 and remanding for

further proceedings. *Dace v. Colvin*, No. 4:12-CV-00047-TIA, 2014 WL 1228894 (E.D. Mo. Mar. 25, 2014). On remand, the Appeals Council returned claims 1 and 2 to the ALJ with the instruction to also reopen and revise the denial of claim 3 if necessary. The ALJ did so, consolidating and ultimately again denying claims 1–3 on January 20, 2016. Dace appealed to this Court a second time. In 2019, the Honorable Patricia L. Cohen, United States Magistrate Judge, resolved the second appeal by again reversing the Commissioner's denial of claims 1–3 and remanding for further proceedings. *Dace v. Saul*, No. 4:17-CV-01775-PLC, 2019 WL 4643976 (E.D. Mo. Sept. 24, 2019).

In the meantime, Dace had filed yet another claim for supplemental-security income (claim 4) while her second appeal was pending, resulting in a determination that she has been disabled since May 25, 2017. *See* Tr. 2812. That determination is not the subject of this appeal—indeed, Dace never mentions it. *See* Docs. 1, 18. The Court only includes it here because, as the Appeals Council stated after Judge Cohen's remand, it meant only the period before May 25, 2017 "require[d] further adjudication." Tr. 2812. The Appeals Council also vacated the ALJ's January 20, 2016 decision and remanded the case, directing the ALJ to "offer the claimant the opportunity for a hearing and address the additional evidence submitted, take any further action needed to complete the administrative record, and issue a new decision for the period prior to May 25, 2017." *Id.*

The ALJ did so, conducting two hearings at which Dace testified. Tr. 2670, 2701. After the hearings and upon review of the evidence, the ALJ found that Dace was not disabled for purposes of disability insurance benefits. Tr. 2643. For purposes of supplemental security income, the ALJ found that Dace had been disabled since August 18, 2016—but not since 2004, as Dace had argued. Tr. 2643. Because the Appeals Council denied Dace's request for review,

Tr. 2600–02, the ALJ's decision dated December 7, 2021, Tr. 2611–43, is the final decision of the Commissioner, and the subject of this appeal.  *See* Doc. 1 at ¶ 2.  The Court finds that the record is somewhat muddled as to which portions of Dace's claims 1, 2, 3, and 4 it was resolving; regardless, in this appeal, the Court addresses all issues Dace raises as to the December 7, 2021 final decision.

## II.     Decision of the ALJ

Under the Social Security Act, an adult individual is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner follows a five-step evaluation when evaluating whether the claimant has a disability.  20 C.F.R. § 416.920(a)(1).  First, the Commissioner considers the claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner evaluates the evidence to determine whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citing 20 C.F.R. § 416.920(c)); *see also* 20 C.F.R. § 416.920(a)(4)(ii).  "An impairment is not severe if it amounts only to a slight abnormality that

3

would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. § 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i).  RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 416.945(a)(1).  While RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," RFC is nonetheless an administrative assessment—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (quoting *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009)). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Ultimately, the claimant is responsible for *providing* evidence relating to his or her RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable

4

effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3).  If the Commissioner determines that the claimant retains the RFC to perform past relevant work, he or she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).

Finally, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of producing evidence showing the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner.  *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At this stage, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant.  *Hensley*, 829 F.3d at 932 (citing *Goff*, 421 F.3d at 785).

Here, the ALJ concluded that Dace was disabled under § 1614(a)(3)(A) of the Social Security Act since August 18, 2016—but not since 2004, as Dace argued.  Tr. 2643.  The ALJ based that conclusion on her findings from the five-step process outlined above.  The ALJ found the following.  First, Dace did not engage in substantial gainful activity during the relevant period—*i.e.*, from her alleged disability onset date, November 9, 2004, through May 24, 2017.  Tr. 2618.

Second, Dace had several severe impairments during the relevant period: "obesity, degenerative disc disease of lumbar and cervical spine, major depressive disorder, borderline personality disorder, bipolar disorder, generalized anxiety disorder, attention deficit disorder, borderline personality disorder, and posttraumatic stress disorder."  Tr. 2618.  Those

5

impairments significantly limited Dace's ability to perform basic work activities. *Id.* Beginning August 18, 2016, Dace had neurocognitive impairments that would result in her being off-task more than 15% per day. Tr. 2639–40.

Third, during the relevant period, Dace was not impaired by any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 2625. Dace, therefore, was not automatically deemed "disabled." *See* 20 C.F.R. § 404.1525(a), (c)(5). Further—despite Dace's severe impairments—she retained the residual functional capacity during the relevant period to perform medium work as defined by the relevant regulations, subject to certain restrictions. Tr. 2629, 2639–40; *see* 20 C.F.R. §§ 404.1567(c), 416.967(c).

Fourth, Dace had no past relevant work. Tr. 2640; *see* 20 C.F.R. §§ 404.1565, 416.965.

Fifth, considering Dace's age, education, work experience, and residual functional capacity, jobs existed in significant numbers in the national economy until August 17, 2016, that Dace could have performed. Tr. 2641; *see* 20 C.F.R. §§ 404.1569, 404.1569a(a), 416.969, 416.969a(a). Despite her impairments, Dace could have successfully adjusted to work. Tr. 2642. The ALJ, therefore, found that Dace was not disabled before August 18, 2016. *Id.* Starting August 18, 2016, however, no jobs existed in the national economy that Dace could have performed. *Id.* Accordingly, the ALJ concluded that Dace was not disabled from November 9, 2004, to August 17, 2016. Starting August 18, 2016, however, Dace was disabled.

Dace appeals, challenging the ALJ's conclusion regarding her disability-onset date and arguing that the ALJ erred by not subpoenaing two pages of a medical document. Doc. 18 at pp. 50–54.

6

**III.    Standard of Review**

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The Court will not "reverse merely 'because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently.'" *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)).

**IV.    Discussion**

    **A.    The ALJ did not abuse her discretion in declining to subpoena two pages of a medical report.**

Before reviewing the ALJ's disability determination, the Court addresses Dace's argument that the ALJ abused her discretion when she declined to subpoena the redacted pages of the Washington University Department of Psychiatry's report containing "Recommendations" and a "Social and Emotional Adaptation" section. Doc. 18 at p. 50–53. Dace argues that her childhood trauma, documented in the report, would support her claim of mental impairments as an adult, which limit her ability to work. Doc. 18 at pp. 51–52. She further argues that because most mental health issues begin at age 14, knowledge about her mental health as a child would

7

help diagnose mental-health problems that she has faced in her adult life. *Id.* Thus, according to Dace, the Court should remand to the ALJ with instructions to review the redacted material. Doc. 18 at p. 54.

Courts review an ALJ's failure to subpoena documents for abuse of discretion. *See Passmore v. Astrue*, 533 F.3d 658, 665–66 (8th Cir. 2008) (quoting *Flatford v. Chater*, 93 F.3d 1296, 1307 (6th Cir. 1996)). An ALJ must "develop the record fully and fairly, independent of the claimant's burden to present his case." *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). The Eighth Circuit, however, has also held that ALJs may make decisions without requested medical evidence, provided other evidence provides a sufficient basis for the ALJ's decisions. *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). Further, a party wishing to subpoena a document must "state the important facts that the . . . document is expected to prove." *See* 20 C.F.R. §§ 404.950(d)(2), 416.1450(d)(2). The Eighth Circuit has ruled that if a plaintiff fails to state the important facts that the subpoenaed document is supposed to prove, or why the facts cannot be proved in the absence of the subpoena, the ALJ has not abused its discretion in denying the request for a subpoena. *See Passmore*, 533 F.3d at 666 (stating the standard of review); *King v. Kijakazi*, 854 F. App'x 778, 778–79 (8th Cir. 2021) (agreeing with district court that ALJ did not abuse his discretion in electing not to subpoena plaintiff's tax records (citing *Passmore*, 533 F.3d at 665–66; *Yancey v. Apfel*, 145 F.3d 106, 113 (2d Cir. 1998))).

Here, Dace argues that the requested document is important because medical evidence suggests that childhood trauma can help diagnose and treat adult mental health issues. Doc. 18 at pp. 50–53. She contends that such diagnoses would prove that Dace suffered from these mental impairments. *Id.* However, agency regulations state that findings of mental impairments are not

8

diagnosis-based; rather, the ALJ looks at the functional limitations *resulting* from the impairment to determine if the impairment is severe.  *See* 20 C.F.R. §§ 404.1521, 404.1522(a).

The ALJ explained on the record her reasoning in denying the subpoena when Dace's attorney renewed his request for it:  "[A]s I said previously[,] the details of [Dace's] childhood trauma are not relevant[.]  [H]ow the trauma affected her during the relevant time and allegedly prevented her from working is what's relevant.  So I will consider the effects of any trauma during the period that we're talking about[,] and I reviewed all the evidence where she discussed that trauma and how that might have affected her."  Tr. 2705.

The ALJ found that the matter that the document was expected to prove—Dace's childhood trauma—was "extensively documented in treatment records," and allowed her to consider "how such trauma . . . affected [Dace's] functioning during the relevant time."  Tr. 2615.  Dace has not shown that the information in the redacted pages would reveal that she had limitations, not already apparent from the record, during the relevant period.  The ALJ fairly developed the record, *Byes*, 687 F.3d at 916 (citing *Snead*, 360 F.3d at 838), and Dace did not meet her burden, *King*, 854 F. App'x at 778–79 (citing *Passmore*, 533 F.3d at 666).  The ALJ, therefore, did not abuse her discretion in declining to subpoena the redacted pages.  *Id.*

**B.      Substantial evidence supports the ALJ's disability determination.**

Dace also argues that the ALJ's conclusion as to Dace's disability onset date is not supported by substantial evidence for two reasons.  Doc. 18 at p. 53–54.  First, Dace argues that it is unlikely that someone with as many impairments as she has can be found to have residual functional capacity.  Doc. 18 at p. 53.  Second, she argues that her poor work record and frequent termination from multiple jobs before the claimed onset date suggest that she could not work during the alleged period.  *Id.* at pp. 53–54.

9

### 1. Residual Functional Capacity

The Eighth Circuit has held that the findings of the ALJ must be upheld if backed by substantial evidence, defined as "less than a preponderance, but . . . enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000) (citing *Cox v. Apfel*, 160 F.3d 1203, 1206–07 (8th Cir. 1998)). The ALJ's assessment of a claimant's residual functional capacity must consider "all *relevant* evidence [from the claimant's] record." *See* 20 C.F.R. §§ 416.945(a)(1), 416.946(c) (emphasis added). While the ALJ must consider all the relevant evidence and not limit review to medical evidence, *Miles v. Barnhart*, 374 F.3d 694, 700 (8th Cir. 2004), RFC determination is ultimately a medical question, *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)). Thus, it must rely on some "medical evidence that addresses the claimant's ability to function in the workplace." *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004) (citing *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002)).

Having found that Dace was not engaged in substantial gainful activity, the ALJ then followed a two-step process, based on 20 C.F.R. §§ 404.1529 and 416.929, to determine (1) whether Dace had a medically determinable impairment during the contested time frame, and if so, (2) whether the impairment qualified as severe. Tr. 2629. Upon review of the entire record, the ALJ decided that Dace retained residual functional capacity to perform medium work, despite her medically determinable impairments—specifically, obesity, degenerative disc disease of the lumbar and cervical spine, major depressive disorder, bipolar disorder, generalized anxiety disorder, attention deficit disorder, borderline personality disorder, and posttraumatic stress disorder. Tr. 2618, 2629.

An impairment (physical or mental) is medically determinable if medically acceptable clinical or diagnostic techniques can substantiate it. 20 C.F.R. §§ 404.1529(b); 416.929(b). The ALJ found that Dace had the following underlying medical impairments since 2004: (1) obesity, (2) degenerative disc disease of the lumbar and cervical spine, (3) major depressive disorder, (4) bipolar disorder, (5) generalized anxiety disorder, (6) attention deficit disorder, (7) borderline personality disorder, and (8) posttraumatic stress disorder. Tr. 2618. The ALJ then evaluated Dace's symptoms' intensity, persistence, and limiting effects on Dace's ability to work to determine Dace's residual functional capacity. Tr. 2629. The ALJ found that Dace's allegations about the limiting effect of the impairments on her ability to work were unsubstantiated and lacked support by objective medical evidence. Tr. 2631.

The ALJ found the following as to Dace's medical issues and treatments. As to obesity, the ALJ, relying on objective medical evidence, found that Dace was obese during the alleged period. Tr. 2618. Dace is approximately 65 inches tall and weighed 179 to 272 pounds during the relevant period. A doctor diagnosed her with obesity; her body mass index was between 41 and 43 during the relevant period. The ALJ considered the functional limitations of Dace's obesity in the residual-functional-capacity assessment, Tr. 2635, and found that the limitations did not impair Dace's residual functional capacity to perform medium work. Tr. 2629.

The ALJ also found that the medical evidence showed Dace suffered from degenerative disc disease of the lumbar and cervical spines. Tr. 2618. Dace underwent multiple spinal X-rays and MRI scans between June 2003 and January 2013. Tr. 2633–34. The cervical spine MRI only showed minimal asymmetric changes with no definite evidence of focal disc protrusion or canal stenosis, and the lumbar spine MRI only showed disc bulging with no focal disc protrusion or canal stenosis. Tr. 2634. Dace's physician characterized all the scan results as normal and

11

prescribed her a muscle relaxant, Soma, and painkillers. *Id.* The ALJ, however, found that this impairment did not limit Dace's ability to work. Tr. 2629. Her physician did not prescribe any assistive device or advise her to abstain from prolonged standing, sitting, or walking. Tr. 2633–35. Instead, he advised her to exercise. Tr. 2633. Further, Dace herself frequently denied musculoskeletal pain and complaints, and there are only a few cases of muscle tenderness and palpitation in the record. Tr. 2634. The ALJ, therefore, found that Dace's impairment left her with residual functional capacity to perform medium work.

Finally, the ALJ found that Dace had multiple psychiatric disorders: "major depressive disorder, bipolar disorder, generalized anxiety disorder, attention deficit disorder, borderline personality disorder, and posttraumatic stress disorder." Tr. 2618. Doctors prescribed her multiple antidepressants and mood-stabilizing drugs to treat her psychiatric issues. Tr. 2635. Doctors noted that Dace would often claim various side effects from the drugs, refuse to take them, and eventually request more benzodiazepines. Tr. 2635. One doctor even reported her being addicted to benzodiazepines after discovering Dace would go "doctor-shopping" to obtain benzodiazepines after her doctor refused to refill them. Tr. 2635. The ALJ, however, found that these impairments did not limit Dace's ability to work. Tr. 2629. Dace's psychiatric reports rebut her claims of poor insight, judgment, and uncooperative and paranoid behavior. Tr. 2636. While she occasionally harbored paranoid and isolative behavior, the reports showed she consistently maintained good attention, concentration, and memory and even held a stable mood in stressful situations. Tr. 2636. The ALJ, therefore, found that Dace's remaining impairments left her with residual functional capacity to perform medium work. Tr. 2629.

The ALJ noted that none of the other evidence from the case record supported Dace's arguments regarding impairments that totally limit her ability to work and that, in fact, the

evidence supported the opposite conclusion.  Tr. 2631.  Specifically, the ALJ gave great weight to Dr. Anne Winkler's and Dr. Karyn Perry's statements.  Tr. 2637–38.  In her assessment, Dr. Winkler found that Dace could perform at medium exertional capacity with only occasional climbing of ladders, ropes, and scaffolds.  *Id*.  She also stated that Dace could sit for 4 hours at a time for 8 hours total with breaks, and that she could stand and walk for 2 hours at a time for 6 hours total with breaks.  Tr. 2638.  Dr. Perry found Dace to have "no limitations in her ability to understand, remember, and carry out simple instructions and to make judgments on simple work-related decisions."  *Id.*  She found a moderate limitation in Dace's ability to make complex decisions, interact with her coworkers, and change situations.  Tr. 2638.  Still, she stated that Dace could perform simple, routine, and repetitive tasks in a low-stress work environment.  *Id.*  Dace did not object to either of these statements.  Substantial evidence supports the ALJ's RFC determination.  Tr. 2639.

### 2. Work History

Dace also argues that her "poor work record" means the ALJ's decision is not supported by substantial evidence.  Doc. 18 at pp. 53–54.  The ALJ considered Dace's work history—or lack thereof—when the ALJ found that Dace had no past relevant work.  Tr. 2640.  While Dace worked in multiple industries between 1993 and 2008, she worked for 66 employers during that time.  Tr. 155–64.  And agency regulations provide that sporadic, "off-and-on" employment is not considered in disability determinations.  *See* 20 C.F.R. §§ 404.1565(a); 416.965(a).

Dace points out that she worked for 66 employers from 1993 through 2008, and argues that "[c]learly Plaintiff was not able to do her assigned work for several reasons," without explaining what "reasons" she refers to.  Doc. 18 at pp. 53–54.  A poor work record predating the date of the alleged disability, however, equally indicates an insufficient motivation to work and

13

"raises some questions as to whether the current unemployment is truly the result of medical problems." *See Pierce v. Kijakazi*, 22 F.4th 769, 773 (8th Cir. 2022) (quoting *Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016)).  The ALJ rightly declined to consider Dace's "off-and-on" employment, 20 C.F.R. §§ 404.1565(a), 416.965(a), and her finding of not disabled before August 18, 2016 is supported by substantial evidence.

| V. | **Conclusion** |

Because Dace has neither shown that the ALJ abused her discretion in denying the subpoena nor demonstrated that the ALJ failed to develop the record adequately, she is not entitled to a rehearing based on the ALJ's failure to subpoena the pages.  *See King*, 854 F. App'x at 778–79 (citing *Passmore*, 533 F.3d at 666).  Dace's challenges regarding the ALJ's RFC determination and past-relevant-work determination also fail.  This Court upholds the ALJ's decision as long as it is supported by substantial evidence.  *Prosch*, 201 F.3d at 1012 (citing *Cox*, 160 F.3d at 1206–07).  Finding that substantial evidence supports the ALJ's conclusions and that the ALJ applied correct legal standards, the Court affirms the decision of the Commissioner and dismisses Dace's complaint with prejudice.  Doc. 1.  A separate judgment accompanies this Memorandum and Order.

So Ordered this 21st day of September 2023.

*SLR.CR*

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

14